**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ONUR ÖZCAN, ORHUN ÖZCAN,  )
SALIH COSKUN, ABUDULLAH  )
OZTURK, KUDRET YÜZÜGÜLER, and  )
MUTLU YÜZÜGÜLER,  )
                       )
       Plaintiffs,  )
                       )      Case No. 25-cv-04562
     v.  )
                       )      Judge Sharon Johnson Coleman
THE BOEING COMPANY,  )
                       )
       Defendant.  )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Onur Özcan, Orhun Özcan, Salih Coskun, Abudullah Ozturk, Kudret Yüzügüler, and Mutlu Yüzügüler are Turkish nationals who allege that they were injured when a plane designed and manufactured by Defendant The Boeing Company ("Boeing") crashed while landing at an airport in Istanbul, Turkey. Plaintiffs also allege that Boeing engaged in malfeasance after the crash by interfering with the Turkish investigation. Before the Court today are Boeing's motion to dismiss all Counts on *forum non conveniens* grounds [17]; Boeing's motion to dismiss Plaintiffs' post-accident claims under Rule 12(b) for lack of jurisdiction and for failure to state a claim [19]; Plaintiffs' first motion to amend their complaint [61]; and Plaintiffs' motion to seal the exhibits to their proposed first amended complaint [61]. The Court finds that Plaintiffs' proposed new claims arising under the FTCA claims are facially non-viable; that Plaintiffs' post-accident claims are barred by claim preclusion; and that the remaining claims must be dismissed in favor of a Turkish forum. Accordingly, the Court grants in part and denies in part Plaintiffs' motion to amend, grants Boeing's motion to dismiss certain claims pursuant to Rule 12(b)(6), and grants Boeing's motion to dismiss under the doctrine of *forum non conveniens* with respect to all remaining claims.

**BACKGROUND**

**Allegations**

Unless otherwise noted, the following facts are taken from Plaintiffs' proposed first amended complaint and are assumed true for the purposes of resolving the instant motions. Dkt. 61-1 [hereinafter "FAC"].

On February 5, 2020, all six Plaintiffs were passengers aboard Pegasus Airlines Flight 2193, a Boeing 737-800 aircraft,[1] which was scheduled to fly from Izmir, Turkey, to Sabiha Gökçen International Airport in Istanbul. The plane crashed while attempting to land in poor weather. Specifically, the plane failed to decelerate properly, overran the runway, crashed through a barrier, and broke into three pieces, resulting in three deaths and injuries to 179 passengers, including Plaintiffs. All Plaintiffs suffered at least some physical injuries, several were significantly injured, and all have since been diagnosed with post-traumatic stress disorder.

Defendant Boeing is one of the largest airplane manufacturers in the world. At the time of the accident, Boeing's headquarters were located in Chicago, Illinois. Since May 2022, Boeing has been headquartered in Arlington, Virginia. Dkt. 17-7 ¶ 8.[2] Boeing designed, manufactured, and sold the Boeing 737-800 aircraft that crashed in Pegasus Airlines Flight 2193. Plaintiffs allege that the Boeing 737-800 suffered from a long list of design and/or manufacturing defects that Boeing negligently refused to correct, even after a similar (but less severe) accident involving a Boeing 737-800 occurred twenty-nine days earlier at the same airport in Istanbul. Plaintiffs allege that these manufacturing

---

[1] On seven occasions, Plaintiffs refer to the plane model as a Boeing 737-800, but on three occasions they refer to it as a Boeing 737-86J. They do not explain whether this difference has any significance or none. The Court will follow Plaintiffs' majority usage in referring to the plane as a Boeing 737-800.

[2] Both parties submitted an enormous number of exhibits with their briefs for the three instant motions. In general, Boeing's exhibits have been filed as separate docket entries (*e.g.*, dkt. 17-7), while Plaintiffs' exhibits have been consolidated into a single large document per filing. For ease of reference, the Court will cite Boeing's exhibits according to their hyphenated docket number (or, for frequently cited exhibits, by descriptive name), with internal page numbers or paragraph numbers used for pincites. Plaintiffs' exhibits will be cited by the page numbers for the pdf file.

defects caused the crash of Pegasus Airlines Flight 2193 (the "Pegasus Airlines Crash"), resulting in injuries to Plaintiffs and other passengers.

After the crash, the Turkish Transport Safety Investigation Center ("TSIC") conducted an official investigation. Plaintiffs allege that Turkish and international law require that such investigations be led solely by Turkish officials. However, about a week after the accident, agents of Boeing and Pegasus Airlines, as well as representatives of the U.S. National Transportation Safety Board ("NTSB") and the U.S. Federal Aviation Administration ("FAA") traveled to the German Federal Bureau of Aircraft Accident Investigation in Braunschweig, Germany to decode the aircraft's Cockpit Voice Recorder and Flight Data Recorder. Plaintiffs allege that Boeing and the U.S. agencies "actively participated in the interpretation, manipulation and reporting of the black box data," among other actions, and thus went far beyond the passive observer or technical advisor roles permitted under Turkish and international law. FAC ¶ 50. The final report issued by the Turkish TSIC allegedly presents a "striking alignment" with Boeing's internal analyses of the Pegasus Airlines Crash, which Plaintiffs believe indicates undue influence of Boeing and the U.S. government on the final report. *Id.* ¶ 53. Ultimately, Plaintiffs claim that Boeing colluded with Pegasus Airlines, the NTSB, the FAA, and possibly the TSIC to cover up evidence of Boeing's alleged liability for the Pegasus Airlines Crash and to shift blame for the accident to third parties, including the flight crew.

**Procedural History**

This case has a long and winding procedural history. Plaintiffs initially filed separate suits against Boeing between June 2021 and January 2022 in the Circuit Court of Cook County. Dkt. 17-7 ex. 2 ¶ 6. Plaintiffs' various cases were consolidated together under case number 2020-L-001929, along with earlier-filed cases from other alleged victims of the Pegasus Airlines Crash. *Id.* These other plaintiffs eventually settled or otherwise dismissed their claims, eventually leaving only the six Plaintiffs in the instant case, plus one additional plaintiff, at the time that the Cook County plaintiffs dismissed

– 3 –

their claims. *Id.* (Where necessary, the Plaintiffs in the instant case will be referred to as "the instant Plaintiffs" to distinguish them from other parties who have sued Boeing.) Additional victims also filed lawsuits against Boeing in the courts of Turkey; according to Boeing, as of June 25, 2025, there were fourteen active lawsuits in Turkish courts related to the Pegasus Airlines Crash. Dkt. 17-30 ¶ 71.

*Cook County Litigation*

On April 1, 2021—before any of the instant Plaintiffs had filed their individual cases—Boeing filed a motion to dismiss the consolidated case for *forum non conveniens*. Dkt. 67-1 at *41–64. After several months, which included a joint motion by the consolidated plaintiffs to compel Boeing to comply with *forum non conveniens* discovery, dkt. 67-1 at *65–74, Boeing withdrew its motion on December 6, 2021, dkt. 67-1 at *197. Plaintiffs characterize this withdrawal as based on an inability to identify the specific evidence that Boeing claimed was unavailable in the United States, dkt. 67 at *2 [hereinafter "FNC Resp."], while Boeing characterizes its withdrawal as based on restrictions under federal law on Boeing's ability to identify and produce evidence related to the then-ongoing TSIC investigation, dkt. 17-7 ¶ 5. Boeing claims that such restrictions were lifted in April 2022. *Id.*

On April 29, 2021, following consolidation of the then-existing cases, the parties began liability fact discovery. Discovery ultimately lasted more than three years and was marred by significant issues. Dkt. 17-23 at *2, 4–5, 6–7. As Judge Patrick Heneghan of the Circuit Court found, the instant "Plaintiffs, by their own admissions, did not actively conduct discovery in any of their cases."[3] *Id.* *7. At this time, Plaintiffs' individual complaints only alleged products liability and negligence against Boeing. FAC ¶ 46. Liability fact discovery eventually closed on June 21, 2024, after multiple extensions. Dkt. 17-23 at *2. Then, on July 15, 2024, Plaintiffs moved to amend their complaints to

---

[3] Other plaintiffs in the consolidated case (who, by this point, had settled or otherwise dismissed their claims) did conduct some discovery. The instant Plaintiffs apparently have access to this discovery material and rely on it in their federal complaint. Dkt. 73 at *7–8; *see* dkt. 73-1 ¶ 8; dkt. 61-2 at *117–124.

add allegations of post-accident fraud committed by Boeing and the U.S. government. Dkt. 17-20 (motion to amend state court complaint); *see* dkt. 17-21 (proposed state court amended complaint); dkt 17-22 (corrected motion for leave to amend complaint and motion to reopen discovery). On September 13, 2024, Plaintiffs moved to reopen discovery, both for their proposed new claims and for the claims in their initial complaint. Dkt. 17-23 at *4; *see* dkt. 17-22. On October 21, 2024, Boeing filed a motion for summary judgment or, alternatively, dismissal for *forum non conveniens*. Dkt. 17-19.

Three days later, on October 24, 2024, Judge Heneghan denied Plaintiffs' motions to amend their complaint and to reopen discovery. *See generally* dkt. 17-23. Following this denial of its motions, Plaintiffs opted to voluntarily dismiss its case pursuant to 735 ILCS 5/2-1009(a), citing its inability to obtain visas for most of the Plaintiffs. FAC ¶ 13; dkt. 17-24 ¶¶ 4–9. Judge Heneghan granted the voluntary dismissal on November 8, 2024. FAC ¶ 13; dkt. 17-25. Under 735 ILCS 5/13-217, Plaintiffs had leave to refile within one year.

*Federal Litigation*

On April 25, 2025, Plaintiffs timely refiled their case in federal court, rather than state court. Dkt. 1. The new federal complaint includes the products liability and negligence claims from the original complaint, as well as allegations of post-crash misconduct by Boeing and the U.S. government that Plaintiffs sought to include in their proposed (but denied) state court amended complaint. *Compare* Compl. ¶¶ 80–144, *with* dkt. 17-21. Claims for loss of consortium have also been added for some individual Plaintiffs.

On July 21, 2025, Boeing filed a motion to dismiss all claims on grounds of *forum non conveniens*, dkt. 17 [hereinafter "FNC Br."], and a separate motion to dismiss Plaintiffs' post-accident claims for lack of jurisdiction and for failure to state a claim, dkt. 19 [hereinafter "R12 Br."]. After Boeing filed

these motions, Plaintiffs' responses were significantly delayed.[4] On January 20, 2026, the Court heard arguments concerning Plaintiffs' most recent motion to extend its response deadlines, where Plaintiffs represented that they wished to filed an amended complaint to include claims against the NTSB and FAA that had recently become eligible under the Federal Tort Claims Act ("FTCA") for filing in federal court. The Court ordered Plaintiffs to file their responses to Boeing's motions to dismiss by January 30, 2026, with no further extensions permitted; Plaintiffs' motion seeking leave to amend the complaint would be due the same day. Dkt. 59. The Court provided a briefing schedule for all remaining response and reply briefs for the three motions. *Id.* The parties timely filed all briefs, except that Plaintiffs never submitted their reply brief for their motion for leave to amend.[5] As that brief has now been overdue for three weeks, without any communication from Plaintiffs concerning it, the Court deems the matter fully briefed and ripe for adjudication. *See* Local Rule ("LR") 78.3.[6]

## DISCUSSION

### I. Motion for Leave to Amend Complaint

#### A. Legal Standard

Under Rule 15(a)(2), a party may amend its pleadings with the court's leave, which should be freely given "when justice so requires." *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019). But district

---

[4] For more information on these delays, see docket entries 31, 34, 36, 37, 45, 53, and 59.

[5] Although timely filed, Plaintiffs' response to Boeing's *forum non conveniens* motion to dismiss exceeds the page limit by ten pages. When setting the briefing schedule, the Court *sua sponte* granted Plaintiffs permission to file either two separate responses to Boeing's motions to dismiss, or to file a single combined response of no more than twenty-five pages. Dkt. 59. Plaintiffs filed two separate response, one of fourteen pages, *see* dkt. 69, and one of twenty-five pages, *see* FNC Resp. This Court would be justified in striking the excess pages or even the entire brief. *See* LR 7.1. However, because Boeing has not raised the issue itself, and because consideration of Plaintiffs' excess pages will not affect the disposition of the case, the Court will accept Plaintiffs' *forum non conveniens* response as filed.

[6] On March 30, 2026, before this order had been published but after it had been drafted, Plaintiffs filed a second motion seeking leave to amend their complaint, dkt. 75, as well as a motion to seal the exhibits to their proposed second amended complaint, dkt. 76. The Court denied both motions as untimely and procedurally improper. Dkt. 78. Then, the next day, Plaintiffs moved to file a reply *instanter* to the pending first motion for leave to amend the complaint. Dkt. 80. The Court also denied that motion as untimely and improper.

courts have discretion to deny leave to amend "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *MAO-MSO Recovery II, LLC v. State Farm Mutual Auto. Ins. Co.*, 935 F.3d 573, 582 (7th Cir. 2019) (citation omitted).

### B. Analysis

Plaintiffs seek to amend their complaint primarily to add the United States as a defendant to the case and to add claims against the FAA and NTSB arising under the FTCA. Dkt. 61 at *2. Plaintiffs stress that although it would "streamline and clarify" their allegations against Boeing, the proposed amended complaint would not assert any new claims against Boeing. *Id.* In brief, Plaintiffs' new FTCA claims relate to the NTSB and FAA's alleged collusion with Boeing to "improperly access, review, and influence critical evidence" for the TSIC investigation. Dkt. 61-1 at ¶ 8.

Boeing raises several arguments against allowing the amendment, which Plaintiffs have not rebutted, owing to their failure to file a timely reply brief. However, even had Plaintiffs filed a reply, the Court does not believe that they would have been able to offer any credible rejoinder to most of Boeing's arguments.[7] First, Boeing argues that the FTCA, under its own terms, "shall not apply to…[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). The Supreme Court has clarified that "the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004). Here, Plaintiffs suffered their initial injuries from the Pegasus Airlines Crash in Turkey. Additionally, all Plaintiffs reside in Turkey, FAC ¶ 14, and there is no evidence that any has spent substantial time in the United States; indeed, as of November 2024, Plaintiffs' counsel had not

---

[7] Plaintiffs did briefly address some of Boeing's arguments in their second motion seeking leave to file an amended complaint. Dkt. 75 at *4–5. However, the Court does not believe that Plaintiffs' short counter-arguments provide a meaningful response, or that they do anything to change the legal analysis.

even been able to obtain a visa for five of the six instant Plaintiffs, dkt. 17-24 ¶ 4. As such, to the extent that Plaintiffs suffered any injury from the NTSB and FAA's alleged actions during the TSIC investigation,[8] such injuries must have been suffered in Turkey. Plaintiffs' FTCA claims thus appear to be barred by 28 U.S.C. § 2680(k).[9]

Additionally, the FTCA specifies that any claim arising under the act is "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 USCS §2401(b). As Boeing points out, the record establishes that Plaintiffs possessed adequate information to know of the federal involvement in the investigation no later than October 4, 2022, when Boeing produced many of the documents that they now rely on for their FTCA claims. Dkt. 73 at *7–8; *see* dkt. 73-1 ¶ 8; dkt. 61-2 at *117–124. It therefore seems that Plaintiffs' FTCA claims accrued, if at all, no later than October 4, 2022. Plaintiffs claim that their FTCA claims were "timely presented" to the agencies, FAC ¶ 124, but the documentation they have submitted indicates that Plaintiffs presented their administrative claims "on or about May 2, 2025"—more than two years after the latest date when Plaintiffs' FTCA claims could have accrued. Dkt. 61-2 at *116.

In their denied second motion seeking leave to file an amended complaint, Plaintiffs argue that they did not have knowledge of the alleged tortious conduct until April 17, 2024, when "Boeing Air Safety Investigator Jacob Zeiger confirmed, for the first time under oath, that Boeing deployed a

---

[8] Boeing disputes that Plaintiffs were injured by its participation in the TSIC investigation. R12 Br. *10[1]

[9] In their denied second motion seeking leave to file an amended complaint, Boeing argues, without citation to authority, that deciding whether the foreign-country exception applies is a "merits determination" that is improper to resolve at the pleading stage. Dkt. 75 at *5. Plaintiffs are incorrect; whether the foreign-country exception applies is a question of law that is appropriate to resolve at on a motion seeking leave to amend where, as here, it is clear from the allegations that the identified cause of action would be futile. *See Divane v. Northwestern University*, 953 F.3d 980, 993 (7th Cir. 2020). Nothing in the proposed second amended complaint changes that analysis.

multi-member team to Turkey, participated in the review of Flight Data Recorder ("FDR") information, and provided findings directly to investigators for use in the official report." Dkt. 75 at *2–3, 5. However, Plaintiffs' argument that they did not know based on *sworn testimony*, even if true, is misplaced. "An FTCA claim accrues when: (A) an individual actually knows enough to tip him off that a governmental act (or omission) may have caused his injury; or (B) a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *Blanche v. United States*, 811 F.3d 953, 958 (7th Cir. 2016) (quoting *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011)). Here, the record from state court litigation easily establishes that Plaintiffs knew "enough to prompt a deeper inquiry" by October 4, 2022 at the latest, and likely before. *Id.*; s*ee* dkt. 73-1 ¶ 8; dkt. 61-2 at *117–124. Sworn testimony is not required in this context; "mere knowledge of the potential existence of a governmental cause is sufficient to start the clock ticking." *Blanche*, 811 F.3d at 958 (citing *United States v. Kubrick,* 444 U.S. 111, 122 (1979). Plaintiffs' FTCA claims are therefore time-barred, in addition to being barred by the foreign country exception.

Rule 15(a)(2) specifies that leave to amend should be "freely give[n] when justice so requires." Here, however, it is clear that Plaintiffs' FTCA claims "would not withstand a motion to dismiss" and are therefore futile. *See Divane v. Northwestern University*, 953 F.3d 980, 993 (7th Cir. 2020) ("A new claim is futile if it would not withstand a motion to dismiss." (quoting *Vargas-Harrison v. Racine Unified School Dist.*, 272 F.3d 964, 974 (7th Cir. 2001))). The Court will not permit Plaintiffs to add those claims to their complaint. Nevertheless, to the extent that the proposed amended complaint would "streamline and clarify" the allegations against Boeing, the Court does not see any reason why such amendments should be rejected. Accordingly, the Court will deny Plaintiffs' motion to amend their complaint with respect to the addition of the FAA and NTSB as defendants, and with respect to the proposed claims against those agencies; however, the Court will grant Plaintiffs leave to amend with respect to all other

– 9 –

proposed amendments to the initial complaint. The proposed amended complaint, as accepted under the terms of this order, will be used below to adjudicate Boeing's motions to dismiss.

## II.    Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6)

### A.    Legal Standard

A motion to dismiss under 12(b)(1) challenges a court's subject-matter jurisdiction. The plaintiff bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing to seek relief. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *International Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In resolving motions under Rules 12(b)(1) and 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 2 F.4th 1002, 1007 (7th Cir. 2021); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019).

### B.    Claim Preclusion

Boeing argues that Plaintiffs' allegations of post-crash misconduct are those that Judge Heneghan refused to allow Plaintiffs to add to their state court complaint. As such, Plaintiffs' post-

accident claims[10] should be barred under the doctrine of claim preclusion and dismissed under Rule

12(b)(6).[11] "The doctrine of claim preclusion rests on the pragmatic insight that one fair opportunity

to litigate a claim is normally enough." *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021). Claim preclusion

blocks future lawsuits when three criteria are met: (1) the identity of parties or their privies, (2) the

identity of claims, and (3) a prior final judgment on the merits. *Id.*; *Scholz v. United States*, 18 F.4th 941,

952 (7th Cir. 2021).

There is little question as to the first and second elements. All parties to the instant case were

also parties to the previous motion to amend Plaintiffs' state court complaint. *Compare* dkt. 1, *and* FAC,

*with* dkt. 17-22. Plaintiffs briefly argue that the addition of the FAA and NTSB as defendants to the

amended complaint may defeat that element, R12 Resp. *8; but, even accepting *arguendo* that is correct,

this Court's denial of leave to add those agencies as defendants leaves no doubt that the parties relevant

to both sets of claims are the same. Additionally, there is an identity of claims. When interpreting the

scope of claims for claim preclusion, federal courts examine if the prior and present claims arise from

the same transaction or involve a common nucleus of operative facts. *See Scholz*, 18 F.4th at 952; *Daza*,

2 F.4th at 684. "Anything falling within that common nucleus, whether or not actually raised, falls

within the scope of the claim and is thus subject to claim preclusion in a later case." *Daza*, 2 F.4th at

684. In their motion seeking leave to amend their state court complaint, Plaintiffs sought to include

---

[10] For clarity, and adapted to the context of the proposed amended complaint, the term "post-accident claims" refers to the claims contained in sections XII (Fraudulent Concealment, Spoliation, and Civil Conspiracy to Mislead Aircraft Accident Investigation) and XIII (Conspiracy to Obstruct Justice) of the proposed amended complaint. It also includes those allegations in sections XI (FTCA claims) and XIV (Motion for Sanctions for Bad Faith Concealment and Tampering with Investigative Evidence), to the extent that those allegations relate to Boeing's alleged actions after the Pegasus Airlines Crash. *But see infra* section IV (dismissing "motion for sanctions" within complaint as improper).

[11] Normally, a defendant should bring a Rule 12(c) motion when raising an affirmative defense like claim preclusion, but when the district court has all the information it needs to rule on a defense (*e.g.*, when provided by prior court rulings), defendants may raise affirmative defenses in a Rule 12(b)(6) motion to dismiss. *See Parungao v. Community Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010); *Tyson v. Mars Wrigley Confectionary U.S.*, LLC, No. 21-CV-3504, 2022 WL 198893, at *1 (N.D. Ill. Jan. 21, 2022) (Coleman, J.).

allegations that Boeing allegedly "engaged in spoliation of evidence to manipulate the crash investigation and illegally participated in drafting the reports." Dkt. 17-20 ¶ 4. Plaintiffs argued that Boeing did so through collusion with Pegasus Airlines, the NTSB, the FAA, and other unnamed Turkish personnel, *id.* ¶¶ 5, 8, in violation of Turkish and international law, *id.* ¶ 7. These are the same core allegations animating Plaintiffs' current post-accident claims, which include titles such as "Fraudulent Concealment, Spoliation, and Civil Conspiracy to Mislead Aircraft Accident Investigation," FAC pt. XII, and "Conspiracy to Obstruct Justice," *id.* pt. XIII. While the claims are not quite identical from one complaint to another, they emerge from the same "common nucleus of operative facts." *Daza*, 2 F.4th at 684. For claim preclusion purposes, that is sufficient to find an identity of claims and satisfy the second element.

The only major question is whether there has been a final judgment on the merits with respect to the claims that Judge Heneghan refused to allow Plaintiffs to add to their state complaint. In his order, which evinces significant frustration with Plaintiffs' litigation behavior, Judge Heneghan ruled that Plaintiffs' proposed amendment was "woefully untimely and could have been filed much earlier." Dkt. 17-23 at *6. Additionally, the court found that the proposed amendment would not cure a defective pleading; instead, because "Intentional and Fraudulent Spoliation of Evidence" is not a claim recognized under Illinois law, the proposed amendment "*would allow* the filing of a defective pleading," which would also be futile. *Id.* at *8. Accordingly, Judge Heneghan denied Plaintiffs' motion for leave to amend their complaint. *Id.* at *8–9.

Boeing argues that, under both Illinois and Seventh Circuit precedent, a denial of leave to amend a complaint operates as a final order with respect to any claims that would have been added in the rejected amendment. R12 Br. *9–10 (citing *Grove v. Carle Found. Hosp.*, 364 Ill. App. 3d 412, 417 (4th Dist. 2006); *Arrigo v. Link*, 836 F.3d 787, 798–800 (7th Cir. 2016)). This strawman defense ignores Boeing's actual argument that the relevant final judgment was the denial of leave to amend. Plaintiffs'

refusal to engage with Boeing's argument would by itself justify granting the motion, particularly given that Plaintiffs had more than six months to work on their response. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). But Boeing is also correct on the law. As the Seventh Circuit has held, allowing a new lawsuit to proceed with claims that were previously rejected through a denial of leave to amend "would render meaningless" the first court's judgment.[12] *Arrigo*, 836 F.3d at 799. Because courts should, and usually do, liberally grant leave to amend, a denial of leave to amend triggers *res judicata* with respect to the claims that would have been added. *Id.* (quoting 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4412 (2d ed. 2016)). The proper response to a final order (such as denial of leave to amend) is to appeal the order, not to refile those claims in a different case. *Id.* (citing *Johnson v. SCA Disposal Servs. of New Eng., Inc.*, 931 F.2d 970, 976 (1st Cir. 1991)); *see also Grove*, 364 Ill. App. 3d at 417 (in denying leave to amend, trial court "treated the proposed amendment as a separate claim… [and] made a final disposition as to that separate claim"). Plaintiffs did not appeal in state court, and to now permit the denied claims to proceed in a new case "would result in the very prejudice and inefficiency that the denial of the untimely amendment… was intended to avoid." *Arrigo*, 836 F.3d at 800.

The Court finds that Judge Heneghan's denial of Plaintiffs' state court motion for leave to amend constituted a final judgment on the merits of the claims that would have been added in that amendment. As such, Boeing has established that all three elements of claim preclusion. The Court therefore grants Boeing's Rule 12(b) motion and dismisses Plaintiffs' post-accident claims, with prejudice, for reasons of *res judicata*.[13]

---

[12] Plaintiffs affirm that the instant case "is not a continuation of Cook County litigation" but rather represents "a new federal action." Dkt. 67 at *6.

[13] Boeing also argues, under Rule 12(b)(1), that Plaintiffs lack standing to bring their post-accident claims because they cannot show that they were injured as a result of Boeing's alleged actions; and even if they were in fact injured, this Court does not have power to redress those injuries, in part because doing so would require

### C. *Motion for Sanctions Contained with Complaint*

Section XIV of Plaintiffs' proposed amended complaint contains a putative motion for sanctions against Boeing for alleged "deliberate concealment, manipulation, and distortion of material evidence." FAC ¶ 176. Boeing argues that this "motion" should be dismissed because it is improper to make a motion within a complaint. R12 Br. at *13 n.6. This Court's Standing Order requires all motions to be noticed up for presentment, and the Northern District of Illinois permits judges to strike all motions the fail to comply with presentment requirements, LR 5.3, or which are not accompanied by a memorandum of law, LR 78.3. Plaintiffs complied with neither of these requirements. Thus, to the extent that Plaintiffs' proposed amended complaint (and/or the initial complaint) contains a motion for sanctions, the Court strikes the motion for failure to abide by the Local Rules. Alternatively, to the extent that section XIV represents a claim for relief against Boeing for alleged misconduct occurring after the Pegasus Airlines Crash, that claim is dismissed along with the rest of Plaintiffs' post-accident claims due to *res judicata*.

## III. Motion to Dismiss for *forum non conveniens*

Finally, Boeing argues that all of Plaintiffs' claims should be dismissed under the doctrine of *forum non conveniens* in favor of a Turkish forum. Given the Court's resolution above of the Rule 12(b) motion to dismiss, the Court will consider Boeing's *forum non conveniens* argument in the context of Plaintiffs' remaining claims, which concern products liability, negligence, and loss of consortium. *See* FAC pt. VI–X, XV.

---

invalidating the sovereign acts of a foreign state. R12 Br. *10–11. Additionally, Boeing claims, under Rule 12(b)(6), that Plaintiffs' post-accident claims fail to state a legal claim under Illinois law, and that they also are not pled with the particularity required under Rule 9(b) for allegations of fraud. *Id.* *12–14. The Court find these arguments persuasive. However, because it has already ruled that Plaintiffs' post-accident claims are precluded from further adjudication, the Court will not take Boeing's additional Rule 12(b)(1) and 12(b)(6) arguments into consideration.

## A.    Legal Standard

"The doctrine of *forum non conveniens*, effectively a supervening venue provision, empowers a court to dismiss a suit when litigating in that court as opposed to an alternative forum unreasonably burdens the defendant." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2022) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007)). "The central focus of the *forum non conveniens* inquiry is convenience." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)). When considering a motion to dismiss for *forum non conveniens*, a court must first determine, as a threshold matter, whether an alternative forum exists "that is both 'available' and 'adequate.'" *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) (quoting *Kamel v. Hill–Rom Co.*, Inc., 108 F.3d 799, 802 (7th Cir.1997)). "Provided an adequate alternative forum exists, the district court must then balance the private and public interest factors that emerge in a given case." *Kamel*, 108 F.3d at 803. In adjudicating these factors, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)

## B.    Availability and Adequacy

"An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction. An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803. Here, a Turkish forum is clearly available because Plaintiffs are all residents and citizens of Turkey. *Id.* For its part, Boeing not only operates in Turkey but also has consented to Turkish jurisdiction, conditional on this Court's grant of its motion to dismiss. FNC Br. *7. And Boeing's expert in Turkish law assures the Court that Turkish courts have jurisdiction over Plaintiffs' claims stemming directly from the Pegasus Airlines Crash, because the accident happened in Turkey and because that is where Plaintiffs are domiciled. *See* dkt. 17-30 ¶¶ 21–

– 15 –

26. Boeing argues that Turkish courts also present an adequate forum because "The Turkish legal system provides individuals injured in aircraft accidents with several potential claims, including claims for strict liability and 'unlawful acts.'" FNC Br. *7 (citing dkt. 17-30 ¶¶ 32-37). That is why several other victims of the Pegasus Airline Crash have filed suit against Boeing in Turkey. *Id.* at *8; *see* dkt. 17-30 ¶ 71. Plaintiffs respond that Turkey is not an adequate forum because Turkish courts have no ability to adjudicate their claims of post-accident misconduct by Boeing and the U.S. government. FNC Resp. *7–10. However, the Court has dismissed those claims, and Plaintiffs offer no argument concerning the adequacy of Turkish courts to adjudicate the remaining claims, which sound in products liability and personal injury; nor do they offer anything other than a bare conclusion to contest availability. *Id.* The Court therefore finds that Turkish courts are both available and adequate to adjudicate Plaintiffs' remaining claims.

### *Private and Public Factors*

"Provided an adequate alternative forum exists, the district court must then balance the private and public interest factors that emerge in a given case." *Kamel*, 108 F.3d at 803. While a plaintiff's choice of forum is normally given strong preference, such a choice is afforded less deference when a foreign plaintiff seeks to litigate in the United States. *Piper Aircraft*, 454 U.S. at 256.

The Seventh Circuit and Supreme Court have identified the following private interest factors:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)). Boeing argues that these factors strongly favor a Turkish forum because most of the evidence related to the crash is located in Turkey and because this Court will have little to no power to enforce subpoenas against Turkish officials and companies who hold relevant evidence. FNC Br. *8–10.

Indeed, difficulties created by the location of evidence have already impacted the case: during state court litigation, the instant Plaintiffs could not sit for depositions because most Plaintiffs were unable to obtain visas. Dkt. 17-24 ¶¶ 4–9. Plaintiffs argue that Boeing cannot credibly complain about the location of the evidence when it also took part in the TSIC investigation. FNC Resp. *16. But Plaintiffs fail to account for or rebut Boeing's assertions that it does *not* have full access to all investigation files, dkt. 71 at *7–8; and that, in any case, most material evidence and witnesses remain located in Turkey and would be difficult or impossible to produce in an American court, FNC Br. *8–10; *see Clerides,* 534 F.3d at 629. Moreover, while some evidence may be in Boeing's possession in the United States, that evidence has mostly been produced already, and any documents that remain to be produced are not located in Illinois—meaning that this particular forum offers few advantages in trade for its disadvantages. Id. at *9–10; dkt. 17-1 ¶¶ 16-17. Finally, evidence in Boeing's possession in the U.S. will not create a reverse of the evidentiary production difficulties were this case to be moved to Turkey, because a Turkish court would have authority to enforce a subpoena against Boeing as a party to the Turkish litigation. Dkt. 71 at *9; dkt. 17-7.

In response, Plaintiffs again focus on their post-accident claims, arguing that the private factors do not favor granting *forum non conveniens* because "Plaintiffs do not allege a conventional foreign crash case focused on pilot error or runway conditions." FNC Resp. *11–12. However, with Plaintiffs' post-accident claims dismissed, "a conventional foreign crash case" is all that remains. Plaintiffs also complain that Boeing is just attempting to relitigate the *forum non conveniens* argument that it initially brought in the Circuit Court of Cook County on April 1, 2021, and which Boeing eventually withdrew, Plaintiffs claim, because it was unable to comply with subpoenas to identify the specific evidence necessitating a Turkish forum. *Id.* at *10–11. However, Boeing credibly argues that its earlier motion had to be withdrawn owing to restrictions on its ability to reveal information that was part of the TSIC investigation, and that those restrictions have long been lifted. Dkt. 17-7 ¶ 5.

More to the point, Boeing attached to its motion a list of numerous pieces of evidence and witnesses that are located in Turkey, much of which it anticipates would be difficult or impossible to produce in a U.S. court. Dkt. 17-1 ¶¶ 14–15. The Court therefore finds that the private interest factors strongly favor a Turkish forum over an American forum.

Finally, the public interest factors also favor a Turkish forum or are neutral. Analysis of the public interest factors mostly turns on the question of which forum has a greater interest in the proceedings. *Gulf Oil Corp.*, 330 U.S. at 508. Specific factors include:

> [T]he administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Clerides*, 534 F.3d at 628 (citing *id.*). Here, it is clear that a Turkish court would have substantial interest in adjudicating a matter related to a crash at a Turkish airport. *See Gulf Oil Corp.*, 330 U.S. at 509. This factor heavily favors Turkey. Similarly, the citizens of the Northern District of Illinois have little interest in a dispute involving a product neither designed, nor manufactured, nor sold in Illinois, and where none of the relevant events took place in Illinois. FNC Br. *15; *see Clerides*, 534 F.3d at 630. To be sure, American citizens generally have an interest in ensuring the safety of planes produced by the largest American airplane manufacture, dkt. 67 at *17–18; but that interest is widely distributed and has little to do with this district specifically, *see Clerides*, 534 F.3d at 630. This factor therefore favors Turkey as well, although not as strongly as the previous factor. Adjudication of Plaintiffs' remaining claims would likely require some application of Turkish tort law, given that the accident occurred in Turkey, although American products liability law may also come into play. Accordingly, this factor slightly favors Turkey or is neutral. Finally, while evidence has not been produced relating to the extent of litigation congestion in the relevant Turkish courts, this Court can certainly attest to the excessive

congestion of the Northern District of Illinois. Plaintiffs do not argue otherwise. *See* FNC Resp. *20. The public interest factors therefore favor Turkey, on balance.

In sum, the courts of Turkey offer a forum that is available and adequate; the private interest factors strongly favor a Turkish forum; the public interest factors generally favor a Turkish forum; and Plaintiffs' choice of a foreign forum, far from their home and the site of the accident, is entitled to little deference under the law. The Court therefore agrees that the Northern District of Illinois is ill-suited as a forum for this dispute. *See Instituto Mexicano,* 29 F.4th at 357. This case should instead be heard in the courts of Turkey. The Court therefore grants Boeing's motion and dismisses all of Plaintiffs' remaining claims, with prejudice, under the doctrine of *forum non conveniens.*

## CONCLUSION

The Court grants in part and denies in part Plaintiffs' motion for leave to amend the complaint [61]. Plaintiffs may not add the FAA and NTSB as defendants, nor may Plaintiffs add any FTCA claims against those agencies; but Plaintiffs may incorporate all other proposed amendments. The Court also grants Plaintiffs' pending motion to seal the exhibits to the proposed first amended complaint [61]. However, the Court also grants both of Boeing's motions to dismiss [17, 19]. The Court dismisses Plaintiffs' post-accident claims under the doctrine of *res judicata*; strikes Plaintiffs' motion for sanctions to the extent that Plaintiffs made such a motion in their initial and/or amended complaint; and dismisses all remaining claims under the doctrine of *forum non conveniens.* All claims are therefore dismissed, with prejudice. Civil case terminated.

**IT IS SO ORDERED.**

Date: 3/31/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge